## UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **MICHAEL ANTHONY**, individually and on behalf of all others similarly situated,<br><br>   *Plaintiff,*<br><br>  v.<br><br>**ZAGE GROUP, LLC**, a Florida Limited Liability Company**,** d/b/a **USA STUDENT DEBT RELIEF; DOUGLAS R. GOODMAN**, in his official and individual capacity; and **DORIS GOODMAN**, in her official and individual capacity.<br><br>   *Defendants.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Michael Anthony ("Plaintiff" or "Anthony") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Zage Group, LLC d/b/a USA Student Debt Relief ("USASDR"), and its owners and operators Douglas R. Goodman ("Mr. Goodman") and Doris Goodman ("Mrs. Goodman") (Defendants collectively referred to as "Defendant" unless otherwise specified), to stop their practice of placing unlawful and unwanted telephonic sales calls to consumers in violation of the Telephone Consumer Protection Act ("TCPA"), including consumers whose personal and residential numbers are on the National Do-Not-Call ("DNC") Registry, and for placing these calls using an Automatic Telephone Dialing System ("ATDS"). Plaintiff brings this action to obtain redress for all persons injured by Defendants' conduct for the four-year period prior to the filing of this action. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1.      Plaintiff Anthony is a natural person and resident of the Commonwealth of Pennsylvania with a principal address in Philadelphia, Pennsylvania.

2.      Defendant USASDR is a Florida Limited Liability Company with its principal place of business located at 1412 Pine Bay Drive, Sarasota, FL 34231 (the "Sarasota Property"). Defendant conducts business throughout this District, the Commonwealth of Pennsylvania, and the United States, by initiating or otherwise placing, directly or through persons on its behalf, the unlawful and unsolicited subject calls at issue in this litigation. Defendant's website is accessible to consumers nationwide and is available at https://usastudentdebtrelief.com/.

3.      Defendant Mr. Goodman is a natural person and the owner, operator and authorized member, agent, and officer of the USASDR.  Mr. Goodman and Mrs. Goodman own the Sarasota Property and, along with their co-Defendant, operate the USASDR business and carry out their unlawful telemarketing calls from this property.

4.      Defendant Mrs. Goodman is a natural person and the owner, operator and authorized manager, agent, and officer of the USASDR.

5.      Mr. and Mrs. Goodman are personally liable under the TCPA because they had direct, personal participation in, or personally authorized or acquiesced to, the conduct found to have violated the TCPA and were not merely tangentially involved.  The Goodmans were and are personally aware of the violations at issue, including Plaintiff's own personal complaints, of TCPA violations against USASDR, yet they continued to engage in, failed to stop or implement proper procedures, and otherwise ratified the violative practices.

6.      Defendants, directly, individually, jointly, and/or in concert with another, or through other persons, entities or agents acting on their behalf, conspired to, agreed to, contributed

to, authorized, assisted with, ratified, and/or otherwise caused all the wrongful acts and omissions, including the dissemination of the unsolicited telephone calls that are the subject matter of this Complaint.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the TCPA, which is a federal statute. The Court also has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), *et seq.* ("CAFA") because there are over 100 class members, there is minimal diversity, and there is over $5,000,000 at issue when the claims of the Classes are aggregated. And none of the exceptions to CAFA applies.

8.     This Court has personal jurisdiction over Defendants because Defendants conduct a significant amount of business in this District, made and continue to make unsolicited calls directed to consumers in this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

9.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants Mr. Goodman and Mrs. Goodman reside in this District and all Defendants are residents of the State of Florida, Defendants conduct a significant amount of business within this District and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## COMMON FACTUAL ALLEGATIONS

10.     USASDR is a purported student debt relief company that, according to its website, provides a service to consumers by "help[ing] find the best option for obtaining a total pardon, or a discount, or to lower the interest rate for [] student loans" for a cost, and more specifically defines its purpose on the About us page of the site: "Our purpose us help as many of the 44 million loan

holders in the United States as possible to find relief from their student loan debts."

11.     Unfortunately for consumers, USASDR casts its marketing net too wide. That is, to solicit new customers, Defendants conducted (and continue to conduct) a wide scale telemarketing campaign that features unsolicited and unwanted pre-recorded cold calls to consumers' personal residential cellular numbers without prior express consent, and that violate the DNC provisions of the TCPA.

12.     In making the autodialed calls, Defendants and/or through authorized agents or marketers hired to place calls on behalf of Defendants, utilized an automatic telephone dialing system ("ATDS"). Specifically, the hardware and software used by Defendants and/or their agents has the capacity to store, produce, and dial random or sequential numbers *en masse*, in an automated fashion, and is knowingly placing calls to U.S. consumers on the DNC Registry.

13.     Defendants were and are fully aware that unsolicited and unwanted calls are being made to consumers through their own efforts and that of their agents.

14.     Defendants knowingly made (and continue to make) unsolicited calls without the prior express consent of the recipients.  In doing so, Defendants not only invaded the personal privacy of Plaintiff and members of the alleged Classes, but also willfully and repeated violated the TCPA.

15.     Plaintiff brings this action on behalf of himself and on behalf of all others who received the same or substantially similar unsolicited and unwanted calls as Plaintiff from April 2019 through the present.

## FACTS SPECIFIC TO PLAINTIFF

### *Defendants USASDR, Mr. Goodman*

### *& Ms. Goodman*

16.    At all times material hereto, Plaintiff was the owner and customary user of the mobile telephone number ending in x555.

17.    Plaintiff's number ending in x555 is used as his personal and residential number. Plaintiff's complete telephone number will be provided directly to counsel for the Defendants in discovery. Plaintiff is not providing his complete telephone number on this publicly filed document to prevent further harm, and more invasion of his privacy and unwanted intrusion into his phone.

18.    Plaintiff Anthony has had his number ending in x555 registered on the DNC Registry since May 20, 2004.

19.    Plaintiff has been receiving student debt relief calls from spoofed and unknown numbers at various times of the day and has been unable to stop such calls due to the caller ID being spoofed, agents refusing to identify themselves with their true identity, or the true entity they are calling from and being provided evasive and non-responsive information when questioning the callers as to why he was being called since he is on the DNC Registry.

20.    Beginning in at least November 2022, Plaintiff began receiving a particular set of calls from an entity known as USA Student Debt Relief.

### THE CALL DETAILS

21.    Specifically, on November 11, 2022, at 11:39 AM, Defendants placed or caused to be placed a telephone call to Plaintiff in which they deliberately falsified the information transmitted to Plaintiff's caller ID display to disguise their identity and displayed a falsified or "spoofed" telephone number of 215-714-6971. Plaintiff answered the call, heard a distinct pause,

a "click", and a "boop" sound associated with an ATDS.

22.     After an initial agent asked preliminary qualifying questions, Plaintiff was greeted by another live agent who presented an unsolicited sales pitch. The agent identified himself as "Kevin" and promoted the availability of "student debt relief" services.

23.     Plaintiff feigned interest in the services for the sole purpose of investigating who was calling and to take actions to prevent future abuse and calls to his number.

24.     During the call, "Kevin" provided the website of http://www.usastudentdebtrelief.com, as well as his call back number as 941-479-9417. Plaintiff then told "Kevin" he would call him back.

25.     When Plaintiff called "Kevin" back, "Kevin" confirmed that USASDR had been in business for "4 years" in Florida and stated that it not only helps people in Pennsylvania, but also people across the country. Specifically, **the representative stated**: "We help everybody across the United States, sir. Anybody that has a federal student loan. *We call all the states*. We call Puerto Rico and everything."

26.     Kevin then identified Defendant, Mr. Goodman as one of the owners and operators, along with the company's corporate office as being 1412 Pine Bay Drive Sarasota FL 34231, which is also posted on the main page of USASDR's website. Mr. Goodman owns the Sarasota Property which is one location at which Defendants operate their business and carry out their unlawful telemarketing calls.

27.     Plaintiff advised Kevin that he is on the DNC Registry and should not have been called, requested that Kevin disclose where and how Plaintiff's information was obtained, and requested to be removed from the lists his number was on — making it clear that he did not consent to any calls.

28.     "Kevin" stated that "TNK" was the entity that had the list, but he would not provide a way to reach them or how to be removed. Plaintiff was unsuccessful in his attempts to discover more about "TNK" and how to be permanently removed from further calls from Defendants.

29.     Kevin stated that he would place Plaintiff on the USASDR's internal DNC list. But he could not recite Plaintiff's number back, demonstrating that he was just pretending to take action. Kevin subsequently hung up on Plaintiff and could not be reached when Plaintiff attempted to call back.

30.     Plaintiff then proceeded to make phone calls to numbers he found online for the Goodmans as the owners and operators of USASDR, leaving voicemails at two different numbers found online for them, including the number of 941-927-0884 for Douglas R. Goodman, and the number of 941-957-8305 for Doris Goodman, about his receipt of the unwanted calls.

31.     After several repeated calls, Plaintiff was able to reach Defendant Mrs. Goodman. She confirmed that she is "one of the owners" of USASDR. Plaintiff explained that he is on the DNC Registry and should not have been called. Plaintiff requested that Ms. Goodman provide information on how Defendants obtained his number. She advised that "TNK are perhaps who provided the leads." She further advised that someone would call the Plaintiff to provide information on how his number was obtained and how to permanently stop the calls.

32.     Plaintiff did not hear back from anyone as promised by Mrs. Goodman. Instead, he continued to receive subsequent sales calls from Defendants on January 6, 2023 at 2:32 PM EST from spoofed caller ID 215-402-5077, and on January 24, 2023 from 2:58 PM EST from spoofed caller ID 215-330-2071.

33.     On the January 6, 2023 call, Plaintiff again feigned interest after receiving another student debt relief call and was asked the same various "pre-qualifying questions," and then

transferred to "Amanda Garcia" — who stated she was with USASDR and provided the same http://www.usastudentdebtrelief.com company website — stating that the her "co-worker" "Timothy" transferred the call from their "telemarketing company" called "Student Loan Services" that makes the calls for USASDR.

34.     During the call Plaintiff again explained that he was on the DNC Registry and should not have been called.

35.     After being placed on hold, Ms. Garcia came back on the line and stated that her supervisor "Manny" was unavailable and at lunch, but she did confirm that she knew Mr. Goodman before she disconnected the call.

36.     Plaintiff immediately then proceeded to call the number he obtained for Mr. Goodman to report the illegal calls again, leaving him a voicemail and telling him to "cease and desist" from making further calls to him and requested a callback.

37.     Plaintiff then called Mrs. Goodman again. She advised, "I think they put your number on that list," and "they're not supposed to call you" and that she already asked her husband, Mr. Goodman. However, she claimed that it would be "illegal" to tell Plaintiff who was placing the calls on the company's behalf, stating that "it is not going to happen." Mrs. Goodman stated that she would try to have a manager to call him back.

38.     Mrs. Goodman said she previously personally called up the "manager" in what he heard as "Columbia" about the calls but would not provide any further details.

39.     Mrs. Goodman also confirmed during the same call that USA Student Debt Relief is the d/b/a for Defendant Zage Group, LLC.

40.     On January 24, 2023, at 2:58 PM EST Plaintiff received another call from spoofed caller ID 215-330-2071. He again feigned interest to investigate who was calling—again listening

to the sales pitch by an agent who identified himself as "Nicholas," who then transferred the call to "Julia," a purported "case manager" with USASDR.

41.     During the call with "Julia," Plaintiff again explained that he is on the DNC list and had already told her company to stop calling. He further inquired if she knew Mr. Goodman, and she confirmed that she did. Plaintiff again requested for someone call him back about the continuing abuse.

### *Failure to Implement Internal DNC Procedures*

42.     Plaintiff also asked "Julia" to provide or direct Plaintiff to the USASDR's internal Do Not Call policy, but she could not.

43.     Subsequently, Plaintiff once again called the numbers he had for Mr. and Mrs. Goodman and again left voicemails reporting the continued abuse.

44.     On the same date, January 24, 2023, at 9:34 PM EST, Plaintiff emailed the company at info@usastudentdebtrelief.com requesting a copy of the company's internal Do Not Call policy.

45.     On January 25, 2023, Plaintiff called USASDR at 941-479-9401, a number provided on the company's website. A woman identifying herself as "Valarie Griffin" answered and stated she was in the "sales area." Plaintiff asked to speak with Mr. Goodman. After being placed on hold several times, she was not able to meet Plaintiff's request to reach Mr. Goodman.

46.     Plaintiff again requested from Ms. Griffin the company's internal Do Not Call policy, but she was not able to produce it.

47.     Subsequently, Ms. Griffin transferred Plaintiff to "Richard Gray" who identified himself as the "supervisor of the customer service department." Gray stated that USASDR had "several call centers" making the calls for the company. Gray stated that "***Douglas is the operations manager,*" "*one of the proprietors,*" and one of "*people in charge of the call***

*centers."*

48.    Gray was asked for a copy of the company's internal Do Not Call policy, but again, he could not produce it.

49.    After much persistence by Plaintiff while on the call, Gray ultimately sent an email to Plaintiff with a pdf file taken from the Federal Communications Commissions (FCC) website called "Consumer Guide: Stop Unwanted Robocalls and Texts" as USASDR's internal Do Not Call policy. Gray stated that Andrew Walker, his manager, sent this to him as their policy.

50.    Gray stated that "I never knew this document existed to be honest with you," referring to the alleged internal Do Not Call policy. He stated that it was never used in any training, nor does he personally know anything about it as a supervisor.

51.    Gray stated that "Student Loan Services" was placing the calls on their behalf, but he did not know the details on how they do "live transfers," and that is done through "management." Gray could not provide any additional information for "Student Loan Services" and that "the people in charge of that" are "working on it."

52.    Shortly thereafter, the connection became distorted and Gray told Plaintiff that he would call him back, but he never called back.

53.    Plaintiff called back several times trying to reach Richard Gray but was unsuccessful.

54.    Plaintiff called the main number on USASDR's website and reached "Blaine Mitchell," who stated that they have "several floors" and informed Plaintiff that he is on the second floor where they accept the inbound calls and that on the first floor (downstairs) is where the outbound telemarketing calls were being generated by "TNK."

55.    Richard Gray eventually called Plaintiff back and said he reviewed the calls and

that they were placed by "New Education Relief." He provided telephone number 657-900-8591, and that "as far as [he] knows" this is who they contracted to get the leads from, and that they are in "another building," calling it their "telemarketing department".

56.     Plaintiff called the number provided by Richard Gray and a man identifying himself as "Jack" answered the phone and stated that his company is "New Education Relief" with the website neweducationrelief.com, operating out of "Santa Ana, California".

57.     When Plaintiff advised Jack about being referred to them by USASDR, Jack advised that he was unable to confirm his company was affiliated with USASDR.

### *Defendants use an Automated and Automatic Dialing System*

58.     On January 30, 2023, Plaintiff again called USASDR and was transferred to a man identifying himself as "Manny Acosta." Plaintiff advised that he was trying to reach the owner of the company over the illegal robocalls

59.     "Manny" seemed surprised that Mr. Goodman had not already contacted Plaintiff about the abuse.

60.     Plaintiff advised "Manny" of the history of the calls and the varying information provided to him about the source of the calls.

61.     During the call, Plaintiff asked "Manny" again about the entities making the calls, stating that he was told "TNK" was one of them. "Manny" specifically stated that "***their job is to make calls all day; they have an automatic dialer that just dials numbers that are entered into the dialing system that they use, and that dialer just calls people every day*** and whenever someone requests or mentions they are on the do not call listed they get blocked" and that his company receives the qualified leads for a fee. "Manny" stated that USASDR's pays for a "transfer" and said that "Student Loan Services" is the name of one telemarketing entity hired to place calls on

behalf of USASDR, but was not more specific about the conflicting information received by Plaintiff.

62.    "Manny" stated that he needed "48 hours" for someone to call him back with more information, and that it would be the "General Manager" whose name is "John Rojas." Plaintiff agreed to the 48 hours for the callback, but he was never called by anyone.

63.    Plaintiff has now brought this suit as a last resort.

64.    Plaintiff believes, in good faith, that he may have received additional unwanted calls from Defendants, including on January 18, 2023. But he did not "play along" in those calls to investigate them. The true number of calls to Plaintiff will be ascertained in discovery through Defendants and their callers' records and other telephone records.

65.    All the calls all started with a brief silence, followed by a "beep" or "boop" before the live representative spoke. The frequency of the calls and the lack of consent are all indicative of the use of an ATDS.

66.    On information and belief, and based on the information provided by Manny, the equipment used to place the calls has the capacity to use a random or sequential number generator in the process of storing numbers from a pre-produced list for calling at a later date or time.

67.    On further information and belief, the equipment at issue also has the capacity to produce telephone numbers using a random or sequential number generator, and the capacity to store numbers and to dial numbers without human intervention.

68.    Plaintiff never consented to receive autodialed calls from Defendants or any of their affiliates or agents.

69.    Plaintiff has never requested that Defendants call to him or. Simply put, Plaintiff has never provided prior express consent to Defendants call to him.

70.    Plaintiff made exhaustive and numerous attempts to get the unsolicited calls to stop.

### *The Harm and Injury*

71.    At all times relevant herein, Plaintiff was the subscriber and personal, residential user, and customary user of his cellular telephone number that Defendants called and is financially responsible for phone service, including the cellular costs and data usage incurred because of the unlawful calls made to Plaintiff by Defendants.

72.    Plaintiff was damaged by Defendants' calls. In addition to using Plaintiff's cellular data and battery life, his privacy was wrongfully invaded, causing intrusion upon his seclusion, intrusion and trespass upon his person property, harassment, annoyance, aggravation, frustration, distraction, inconvenience, embarrassment, time spent investigating, and risk of future harm. Indeed, Plaintiff requested that Defendants stop, but Defendants continued to call him. Plaintiff has become understandably aggravated with having to deal with the frustration of repeated, unwanted, robo-calls, forcing him to divert attention away from his work, home life, and other personal and family activities. Plaintiff wasted considerable time investigating to discover the source and company responsible for the unwanted, illegal and unauthorized calls to Plaintiff.

73.    To redress these injuries, Plaintiff, on behalf of himself and the Classes of similarly situated individuals, brings suit under the TCPA, which prohibits unsolicited calls to cellular telephones of consumers who have not consented to receive them. On behalf of the Classes, Plaintiff seeks an injunction requiring Defendant to cease all unauthorized calling activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## LIABILITY FOR CALLS PLACED BY THIRD PARTIES

75. To the extent Defendants outsourced their robocalling, they are still liable for calls that violate the TCPA.

76. Defendants are liable for third-parties' actions because they took steps to cause the calls to be made, and/or because the calls were made pursuant to Defendants' actual authority, apparent authority and/or ratification, or pursuant to joint enterprise or acting in concert liability.

77. Defendants hire and engage marketers and callers to solicit customers on its behalf.

78. Indeed, on each of the calls the live operator identified themselves as employees, agents, and/or to be calling on behalf of USASDR. Defendants' representatives also advised that requests were made to stop the illegal calls, demonstrating not only the ability to control, but also Defendants' ability to track marketing activity. It further demonstrates Defendants' ability and control to request and obtain data from its callers.

79. Defendants pay their callers for leads.

80. Despite Defendants knowing that telemarketing in violation of the TCPA is unlawful, they failed to remove callers whom they know, or should know, engage in illegal marketing, and it continue to reap the benefits of the unlawful telemarketing that it facilitates.

### Direct Liability

81. On May 9, 2013, the FCC's Declaratory Ruling confirmed that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places

14

the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules, 28 FCC Rcd. 6574, at ¶ 37 (2013) ("FCC 2013 Ruling),* 28 FCC Rcd at 6588 (¶37) (internal citations omitted).

82.     Defendants are directly liable for the telemarketing at issue because it authorized or facilitated the promotion of its business, including the authorized use of its name USA Student Debt Relief on the calls. Defendants knowingly compensate their calls for generating business for Defendants, and retains customers acquired and derived from the calls.

83.     Defendants have the right to control over whether, and under what circumstances, they accept customers, and the methods by which their callers can market on their behalf. It knows, should know, or turns a blind eye, to their callers' unlawful telemarketing.

## Agency

84.     Moreover, the *May 2013 FCC* Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id.* at 6587 n. 107.

85.     Prior to conducting discovery, due to the anonymous nature of robocalling, Plaintiffs many times have no way to confirm identify the exact party who called their phones. For the purposes of TCPA liability, Plaintiff is not required or expected to know this information at the pleading stage.

86.    The *May 2013 FCC* Ruling states that called parties may obtain "evidence of these kinds of relationships… through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶46).  Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶46).

87.    Here, Defendants provided their marketers with authority to use USASDR's trade name and to solicit business on their behalf to create the appearance that the caller was permitted to, and was acting on behalf of, Defendants. Defendants utilized a systematic campaign in a seamless process to make it appear to Plaintiff and Class Members that USASDR was calling them.

88.    Defendants enjoyed the benefits of the mass robo-calling.

89.    The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA,* CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (13) (1995).

90.    The FCC stated within their January 4, 2008 ruling, that a company on whose behalf a telephone call is made bears the ultimate responsibility for any violations.

91.    The *May 2013 FCC Ruling* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.  28 FCC Rcd at 6586 (34). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a

reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at ¶ 46. Nevertheless, Defendants and their callers do have in place a formal relationship, which is tracked and recorded, the extent of which will be the subject of discovery.

92.    Defendants have access to the sales and customers generated by the illegal robo-calling issue in this case.

93.    The *May 2013 FCC Ruling* also clarifies circumstances under which a telemarketer has apparent authority.

94.    Defendants authorized their marketers to generate prospective customers for them.

95.    Plaintiff reasonably believed that the marketers who called him had received permission, authority, and instruction to conduct activity on behalf of Defendants.

96.    Defendant "manifest[ed] assent or otherwise consent[ed]… to act" on behalf of its telemarketers, as described in the Restatement (Third) of Agency.

97.    Furthermore, Defendants consented and/or provided express or implied authority to their marketers to hold themselves out as Defendants' marketers or agents.

98.    At a minimum, Defendants' marketers, had implied actual and/or apparent authority to market on behalf of Defendants.

99.    Although Defendants may not have directly initiated these calls, they are directly liable for their own participation and involvement in making and facilitating them. *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 378 (4th Cir. 2013), also compare 47 U.S.C. § 227(b)(1)(A)(iii) (prohibiting the "making" of such calls), *with* 47 U.S.C. § 227(c)(5) (prohibiting the "initiating" calls).

100.    The Federal Communications Commission ("FCC") has instructed that sellers like Defendants may not avoid liability by outsourcing telemarketing. *FCC 2013 Ruling at ¶ 37".*

101.     Third-party lead generators and/or marketers that made or facilitated the texts described herein did so "on behalf of" Defendants within the meaning of the FCC's Declaratory Rulings and 47 U.S.C. § 227(c)(5).

102.     Defendants cloaked their authorized callers with apparent authority to place the texts at issue on its behalf.

### Ratification

103.     Further, Defendants ratified the unlawful calls by knowingly accepting business that originated through them.

104.     Despite being on notice of violations, Defendants continue to work with the callers that perform illegal robocalling.

105.     Defendants took advantage of the violations by having its authorized callers solicit prospective customers while turning a blind eye to the way the potential customer was identified.

106.     Defendants permitted the calling tactics because it was aware, or should have been aware through the exercise of reasonable diligence, that callers working on their behalf were violating the TCPA.

107.     Defendants failed to properly monitor callers operating on their behalf and accepted business that originated through the illegal telemarketing calls.

108.     Defendants cannot legally accept business derived from telemarketing, if the entities that are initiating such calls violate the TCPA in any respect, including those that do not have or adhere to valid Do Not Call policies. Pursuant to the TCPA, 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200, sellers like Defendants here are liable for noncompliant calls initiated by telemarketers on their behalf.

## Joint Enterprise and Acting in Concert Liability

109.    Defendants had a tacit agreement or approved of after the fact the calls.

110.    Defendants were part of a common enterprise and had a community of interest in promoting Defendant's business pursuant to telephone telemarketing.

111.    As a result, Plaintiff's injury is indivisible, and Defendant is liable for the resulting damage to Plaintiff caused by Defendants' callers.

112.    Defendants acted in concert when they arranged to solicit and accepted customers derived from illegal calls.

113.    Defendants were part of a common design to robo-call potential customers and then solicit them for Defendants' business.

114.    Defendants knew or should have known through reasonable diligence that that its callers' conduct was a breach of duty to Plaintiff in violating the TPCA.

115.    Defendants gave substantial assistance in accomplishing the tortious result, including compensating their marketers and financially incentivizing them to generate customers, and providing them tools and support to do so.

116.    Defendants furthered the tortious conduct by their cooperation, failures to act, and/or compensation paid to their callers for their own benefit.

117.    As a result, Plaintiff's injury is indivisible and Defendants are jointly and severally liable for the resulting damage caused to Plaintiff, to the extent the damage was caused by Defendant's marketers.

Defendant worked in concert to effectuate the texts and telemarketing described herein, and should be held liable for the texts through the above principals of vicarious liability and other agency/ratification theories.

## CLASS ALLEGATIONS

118.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2)

and Rule 23(b)(3) on behalf of himself and the Classes defined below:

**Do Not Call Registry Class:**  All people in the United States who from four years
prior to the filing of this action (1) were called by or on behalf of Defendants; (2)
more than one time within any 12-month period; (3) where the person's telephone
number had been listed on the National Do Not Call Registry for at least thirty
days; (4) for the purpose of selling Defendants' products and services; and (5) for
whom Defendants' claim (a) it did not obtain prior express written consent, or (b)
it obtained prior express written consent in the same manner as Defendant claims
it  supposedly obtained prior express written consent to call the Plaintiff.

**Internal DNC Class:** All persons within the United States who, within the four
years prior to the filing of this Complaint through the date of class certification,
(1) received two or more calls within any 12-month period, (2) for the purpose of
promoting or selling Defendants' products and services, (3) to said person's
residential telephone number, (4) after being told to stop or making a similar
request to no receive future calls.

**Robocall Class:** All persons in the United States who, within the four (4) years
prior to the filing of this action, received a call from Defendants or anyone on
Defendants' behalf, to said person's cellular telephone number, advertising
Defendants' products or services, using a similar dialing system used to call
Plaintiff, or using an Automatic Telephone Dialing System, without the recipients'
prior express written consent, in violation of the TCPA.

119.    The following individuals are excluded from the Classes: (1) any Judge or

Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries,

parents, successors, predecessors, and any entity in which Defendant or its parents have a

controlling interest and their current or former employees, officers and directors; (3) Plaintiff's

counsel and Defendant's counsel; (4) persons who properly execute and file a timely request for

exclusion from the Classes; (5) the legal representatives, successors or assigns of any such

excluded persons; and (6) persons whose claims against Defendant have been fully and finally

adjudicated and/or released. Plaintiff anticipates the need to amend the class definitions following

appropriate discovery.

120.    **Numerosity**: The exact size of the Classes is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant sent autodialed calls to thousands of consumers who fall into the definition of the Classes. Class members can be easily identified through Defendant's records.

121.    **Typicality**: Plaintiff's claims are typical of the claims of other members of the Classes, in that Plaintiff and the class members sustained damages arising out of Defendant's uniform wrongful conduct.

122.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to the Classes.

123.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)    Whether, within the four years prior to the filing of the Complaint, Defendant or its agents sent any unsolicited calls to a Class member using a dialing system to any telephone number assigned to a cellular phone service;

(b)    Whether Plaintiff and Class Members registered a phone number on the National Do Not Call Registry;

(c)    Whether the dialing system used to call Plaintiff and Class Members is an Automatic Telephone Dialing System;

(d)    How Defendant obtained the numbers of Plaintiff and Class members;

(e)    Whether Defendant engaged in telemarketing when it sent the calls which are the subject of this lawsuit;

(f)    Whether the calls made to Plaintiff and Class Members violate the TCPA and its regulations;

(g)    Whether Defendant willfully or knowingly violated the TCPA or the rules prescribed under it;

(h)    Whether Defendant instituted procedures for maintaining a list of persons who request not to receive telemarketing calls that met the standards set forth in 47 C.F.R. § 64.1200(d)

(i)    Whether Plaintiff and the members of the Class are entitled to statutory damages, treble damages, and attorney fees and costs for Defendant's acts and conduct;

(j)    Whether Plaintiff and members of the Class are entitled to a permanent injunction enjoining Defendants from continuing to engage in its unlawful conduct; and

(k)  Whether Plaintiff and the Class are entitled to any other relief.

124.    **Superiority & Manageability**: This case is also appropriate for class certification under Rule 23(b)(3) because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation

necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual class members to obtain effective relief from Defendant's misconduct. Even if class members could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured. Also, there are no pending governmental actions against Defendant for the same conduct.

125.    **Conduct Similar Towards All Class Members:** By committing the acts set forth in this pleading, Defendant has acted or refused to act on grounds substantially similar towards all members of the Classes so as to render final injunctive relief and corresponding declaratory relief appropriate so as to warrant certification under Rule 23(b)(2).

<u>**COUNT I**</u>
**Violation of 47 U.S.C. § 227, *et seq.***
**(Against USASDR On Behalf of Plaintiff and the Do Not Call Registry Class)**

126.    Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 125 of this Complaint as though fully stated herein.

127.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

128.    Because the calls were for the purpose of advertising, promoting, and encouraging Defendant's product or service, they constitute telephone solicitations under the TCPA. The calls

were for the purpose of generating business and revenue for Defendant. Acquisition of new customers is so valuable to Defendant that it pays its calls to generate leads and customer. If Plaintiff had signed up for Defendant's services due to the calls, Defendant would have retained the benefit of the calls – that was the purpose of the calls.

129.    The calls were for the purpose of encouraging the purchase of Defendant's product or service so that Defendant derives financial gain.

130.    Plaintiff's personal and residential telephone number has been registered on the national Do-Not-Call Registry throughout the four-year period prior to the filing of this Complaint.

131.    47 C.F.R. § 64.1200(e), provides that 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

132.    Residential number does not just mean landlines. It includes cell phones that are used for personal purposes. *See* 47 U.S.C. § 227(e).

133.    Calls and texts to numbers on the DNC registry violate the TCPA. *See* 47 C.F.R. § 1200(c)(2).

134.    Wireless phone subscribers have always been able to add their personal wireless phone numbers to the national Do-Not-Call list.[1]

135.    47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity

---

1.    *See* Federal Communications Comission, Wireless Phones and the National Do-Not-Call List, https://www.fcc.gov/consumers/guides/wireless-phones-and-national-do-not-call-list#:~:text=Placing%20telemarketing%20calls%20to%20wireless,been%20%2D%20illegal%20in%20most%20cases. (last visited March 9, 2023)

has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

136.    Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

137.    Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do No Call Registry Class members who registered their respective personal and residential telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

138.    Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry class received more than one telephone call in a 12-month period made by or on behalf of GLOBAL in violation of 47 C.F.R. § 64.1200, as described above.  As a result of Defendants' conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

139.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, USASDR, individually, and jointly and severally, as set forth

in the Prayer for Relief below.

## COUNT II
### Violation of 47 U.S.C. § 227, *et seq.*
### (Against USASDR On Behalf of Plaintiff and the Internal DNC Class)

140.    Plaintiff incorporates by reference all of the allegations contained in paragraphs 1

through 125 of this Complaint as though fully stated herein.

141.    In pertinent part, 47 C.F.R. § 64.1200(d) provides:

No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1)    **Written policy.** Persons or entities making calls for telemarketing purposes    must have a    written policy, available upon demand, for maintaining a do-not-call list.

(2)    **Training of personnel engaged in telemarketing.** Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3)    **Recording, disclosure of do-not-call requests.** If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not- call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

*       *       *

26

(6) **Maintenance of do-not-call lists.** A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

143.    Pursuant to 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

144.    Plaintiff and the Internal DNC Class members made requests to not to receive future text message solicitations.

145.    Defendant failed to honor Plaintiff's and the Internal DNC Class members' opt-out requests.

146.    Defendant also failed to honor Plaintiff's demand for Defendant's internal do-not-call procedures.

147.    As outlined in detail above, Defendant has violated the requirements of section 64.1200(d) by failing to (1) maintain the required written policies; (2) provide any training to their personnel engaged in telemarketing; (3) maintain an internal do- not-call list and honor consumer opt-out requests; and (4) honoring opt-out requests.

148.    Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the Internal DNC Class members are entitled to an award of $500.00 in statutory damages, for each call placed by, or on behalf of, Defendant.

149.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should treble the amount of statutory damages recoverable by the members of the Internal DNC Class.

150.    Plaintiff and the Internal DNC Class members also seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to section 227(c)(5).

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, USASDR, individually, and jointly and severally, as set forth in the Prayer for Relief below.

### COUNT III
### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. § 227(b)
### (Against USASDR on Behalf of Plaintiff and the Robocall Class)

151.    Plaintiff incorporates by reference all the allegations contained in paragraphs 1 through 125 above as though fully stated herein.

152.    It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system. . .to any telephone number assigned to a . . . cellular telephone service . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

153.    Automatic telephone dialing system refers to "equipment which has the capacity---(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

154.    Defendant  – or third parties directed or authorized by Defendant – used equipment having the capacity to randomly or sequentially generate telephone numbers and to dial such numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined above.

155.    These calls were made without regard to whether or not Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not

have prior express consent to call the cellular phones of Plaintiff and the other members of the putative Class when its calls were made.

156.    Defendant has, therefore, violated Sec. 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cellular phones of Plaintiff and the other members of the putative Class without their prior express written consent.

157.    Furthermore, it is a violation of the TCPA "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior consent of the called party, unless the call is initiated for emergency purposes. . . ." 47 U.S.C. 227(b)(1)(B); 47 C.F.R. § 64.1200(a)(3).

158.    The foregoing acts and omissions of Defendant constitutes numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

159.    As a result of Defendant's negligent violations of 47 U.S.C. § 227 et seq., Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

160.    At all relevant times, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

161.    Defendant knew that it did not have prior express consent to make these calls, and knew or should have known that its conduct was a violation of the TCPA.

162.    Because Defendant knew or should have known that Plaintiff and Class Members did not give prior express consent to receive autodialed calls, the Court should treble the amount of statutory damages available to Plaintiff and members of the Putative Class pursuant to section 227(b)(3)(C) of the TCPA.

163.    Likewise, since Defendant knew or should have known that Plaintiff and Class Members did not give prior express consent to receive calls using an ATDS, the Court should treble the amount of statutory damages available to Plaintiff and members of the Putative Class pursuant to section 227(b)(3) of the TCPA.

164.    As a result of Defendant knowing and/or willful violations of 47 U.S.C. § 227(b), Plaintiff and the Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(C).

165.    Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class Members relief against Defendant, USASDR, individually, and jointly and severally, as set forth in the Prayer for Relief below.

## COUNT IV
### Violation of 47 U.S.C. § 227, *et seq.*
### (Against MR. GOODMAN On Behalf of Plaintiff and the Do Not Call Registry Class)

142.    Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 125 of this Complaint as though fully stated herein.

143.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

144.    Because the calls were for the purpose of advertising, promoting, and encouraging Defendant's product or service, they constitute telephone solicitations under the TCPA. The calls were for the purpose of generating business and revenue for Defendant. Acquisition of new

customers is so valuable to Defendant that it pays its calls to generate leads and customer. If Plaintiff had signed up for Defendant's services due to the calls, Defendant would have retained the benefit of the calls – that was the purpose of the calls.

145.    The calls were for the purpose of encouraging the purchase of Defendant's product or service so that Defendant derives financial gain.

146.    Plaintiff's personal and residential telephone number has been registered on the national Do-Not-Call Registry throughout the four-year period prior to the filing of this Complaint.

147.    47 C.F.R. § 64.1200(e), provides that 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

148.    Residential number does not just mean landlines. It includes cell phones that are used for personal purposes. *See* 47 U.S.C. § 227(e).

149.    Calls and texts to numbers on the DNC registry violate the TCPA. *See* 47 C.F.R. § 1200(c)(2).

150.    Wireless phone subscribers have always been able to add their personal wireless phone numbers to the national Do-Not-Call list.[2]

151.    47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

---

2.    *See* Federal Communications Comission, Wireless Phones and the National Do-Not-Call List, https://www.fcc.gov/consumers/guides/wireless-phones-and-national-do-not-call-list#:~:text=Placing%20telemarketing%20calls%20to%20wireless,been%20%2D%20illegal%20in%20most%20cases. (last visited March 9, 2023)

152.    Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

153.    Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do No Call Registry Class members who registered their respective personal and residential telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

154.    Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry class received more than one telephone call in a 12-month period made by or on behalf of GLOBAL in violation of 47 C.F.R. § 64.1200, as described above.  As a result of Defendants' conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

155.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, MR. GOODMAN, individually, and jointly and severally, as set forth in the Prayer for Relief below.

**COUNT V**
**Violation of 47 U.S.C. § 227, *et seq.***
**(Against MR. GOODMAN On Behalf of Plaintiff and the Internal DNC Class)**

156.    Plaintiff incorporates by reference all of the allegations contained in paragraphs 1

through 125 of this Complaint as though fully stated herein.

157.    In pertinent part, 47 C.F.R. § 64.1200(d) provides:

No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(3)    **Written policy.** Persons or entities making calls for telemarketing purposes    must have a    written policy, available upon demand, for maintaining a do-not-call list.

(4)    **Training of personnel engaged in telemarketing.** Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(4)    **Recording, disclosure of do-not-call requests.** If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not- call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

*    *    *

(6) **Maintenance of do-not-call lists.** A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

166.    Pursuant to 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

167.    Plaintiff and the Internal DNC Class members made requests to not to receive future text message solicitations.

168.    Defendant failed to honor Plaintiff's and the Internal DNC Class members' opt-out requests.

169.    Defendant also failed to honor Plaintiff's demand for Defendant's internal do-not-call procedures.

170.    As outlined in detail above, Defendant has violated the requirements of section 64.1200(d) by failing to (1) maintain the required written policies; (2) provide any training to their personnel engaged in telemarketing; (3) maintain an internal do- not-call list and honor consumer opt-out requests; and (4) honoring opt-out requests.

171.    Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the Internal DNC Class members are entitled to an award of $500.00 in statutory damages, for each call placed by, or on behalf of, Defendant.

172.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should treble the amount of statutory damages recoverable by the members of the Internal DNC Class.

173.    Plaintiff and the Internal DNC Class members also seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to section 227(c)(5).

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, MR. GOODMAN, individually, and jointly and severally, as set forth in the Prayer for Relief below.

## COUNT VI
## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
## 47 U.S.C. § 227(b)
**(Against MR. GOODMAN on Behalf of Plaintiff and the Robocall Class)**

174.    Plaintiff incorporates by reference all the allegations contained in paragraphs 1 through 125 above as though fully stated herein.

175.    It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system. . .to any telephone number assigned to a . . . cellular telephone service . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

176.    Automatic telephone dialing system refers to "equipment which has the capacity---(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

177.    Defendant  – or third parties directed or authorized by Defendant – used equipment having the capacity to randomly or sequentially generate telephone numbers and to dial such numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined above.

178.    These calls were made without regard to whether or not Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cellular phones of Plaintiff and the other members of the putative Class when its calls were made.

179.    Defendant has, therefore, violated Sec. 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cellular phones of Plaintiff and the other members of the putative Class without their prior express written consent.

180.    Furthermore, it is a violation of the TCPA "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior consent of the called party, unless the call is initiated for emergency purposes. . . ." 47 U.S.C. 227(b)(1)(B); 47 C.F.R. § 64.1200(a)(3).

181.    The foregoing acts and omissions of Defendant constitutes numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

182.    As a result of Defendant's negligent violations of 47 U.S.C. § 227 et seq., Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

183.    At all relevant times, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

184.    Defendant knew that it did not have prior express consent to make these calls, and knew or should have known that its conduct was a violation of the TCPA.

185.    Because Defendant knew or should have known that Plaintiff and Class Members did not give prior express consent to receive autodialed calls, the Court should treble the amount of statutory damages available to Plaintiff and members of the Putative Class pursuant to section 227(b)(3)(C) of the TCPA.

186.    Likewise, since Defendant knew or should have known that Plaintiff and Class Members did not give prior express consent to receive calls using an ATDS, the Court should

treble the amount of statutory damages available to Plaintiff and members of the Putative Class pursuant to section 227(b)(3) of the TCPA.

187.    As a result of Defendant knowing and/or willful violations of 47 U.S.C. § 227(b), Plaintiff and the Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(C).

188.    Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class Members relief against Defendant, MR. GOODMAN, individually, and jointly and severally, as set forth in the Prayer for Relief below.

### COUNT VII
### Violation of 47 U.S.C. § 227, *et seq.*
### (Against MRS. GOODMAN On Behalf of Plaintiff and the Do Not Call Registry Class)

158.    Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 125 of this Complaint as though fully stated herein.

159.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

160.    Because the calls were for the purpose of advertising, promoting, and encouraging Defendant's product or service, they constitute telephone solicitations under the TCPA. The calls were for the purpose of generating business and revenue for Defendant. Acquisition of new customers is so valuable to Defendant that it pays its calls to generate leads and customer. If

Plaintiff had signed up for Defendant's services due to the calls, Defendant would have retained the benefit of the calls – that was the purpose of the calls.

161.    The calls were for the purpose of encouraging the purchase of Defendant's product or service so that Defendant derives financial gain.

162.    Plaintiff's personal and residential telephone number has been registered on the national Do-Not-Call Registry throughout the four-year period prior to the filing of this Complaint.

163.    47 C.F.R. § 64.1200(e), provides that 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

164.    Residential number does not just mean landlines. It includes cell phones that are used for personal purposes. *See* 47 U.S.C. § 227(e).

165.    Calls and texts to numbers on the DNC registry violate the TCPA. *See* 47 C.F.R. § 1200(c)(2).

166.    Wireless phone subscribers have always been able to add their personal wireless phone numbers to the national Do-Not-Call list.[3]

167.    47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

---

3.      *See* Federal Communications Comission, Wireless Phones and the National Do-Not-Call List, https://www.fcc.gov/consumers/guides/wireless-phones-and-national-do-not-call-list#:~:text=Placing%20telemarketing%20calls%20to%20wireless,been%20%2D%20illegal%20in%20most%20cases. (last visited March 9, 2023)

168.    Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

169.    Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do No Call Registry Class members who registered their respective personal and residential telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

170.    Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry class received more than one telephone call in a 12-month period made by or on behalf of GLOBAL in violation of 47 C.F.R. § 64.1200, as described above.  As a result of Defendants' conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

171.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, MRS. GOODMAN, individually, and jointly and severally, as set forth in the Prayer for Relief below.

**COUNT VIII**
**Violation of 47 U.S.C. § 227, *et seq.***
**(Against MRS. GOODMAN On Behalf of Plaintiff and the Internal DNC Class)**

172.    Plaintiff incorporates by reference all of the allegations contained in paragraphs 1

through 125 of this Complaint as though fully stated herein.

173.    In pertinent part, 47 C.F.R. § 64.1200(d) provides:

No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(5)    **Written policy.** Persons or entities making calls for telemarketing purposes    must have a    written policy, available upon demand, for maintaining a do-not-call list.

(6)    **Training of personnel engaged in telemarketing.** Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(5)    **Recording, disclosure of do-not-call requests.** If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not- call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

\*      \*      \*

(6) **Maintenance of do-not-call lists.** A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

189.    Pursuant to 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

190.    Plaintiff and the Internal DNC Class members made requests to not to receive future text message solicitations.

191.    Defendant failed to honor Plaintiff's and the Internal DNC Class members' opt-out requests.

192.    Defendant also failed to honor Plaintiff's demand for Defendant's internal do-not-call procedures.

193.    As outlined in detail above, Defendant has violated the requirements of section 64.1200(d) by failing to (1) maintain the required written policies; (2) provide any training to their personnel engaged in telemarketing; (3) maintain an internal do- not-call list and honor consumer opt-out requests; and (4) honoring opt-out requests.

194.    Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the Internal DNC Class members are entitled to an award of $500.00 in statutory damages, for each call placed by, or on behalf of, Defendant.

195.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should treble the amount of statutory damages recoverable by the members of the Internal DNC Class.

196.    Plaintiff and the Internal DNC Class members also seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to section 227(c)(5).

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, MRS. GOODMAN, individually, and jointly and severally, as set forth in the Prayer for Relief below.

**COUNT IX**
**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**
**47 U.S.C. § 227(b)**
**(Against MRS. GOODMAN on Behalf of Plaintiff and the Robocall Class)**

197.    Plaintiff incorporates by reference all the allegations contained in paragraphs 1 through 125 above as though fully stated herein.

198.    It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system. . .to any telephone number assigned to a . . . cellular telephone service . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

199.    Automatic telephone dialing system refers to "equipment which has the capacity--(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

200.    Defendant – or third parties directed or authorized by Defendant – used equipment having the capacity to randomly or sequentially generate telephone numbers and to dial such numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined above.

201.    These calls were made without regard to whether or not Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cellular phones of Plaintiff and the other members of the putative Class when its calls were made.

202.    Defendant has, therefore, violated Sec. 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cellular phones of Plaintiff and the other members of the putative Class without their prior express written consent.

203.    Furthermore, it is a violation of the TCPA "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior consent of the called party, unless the call is initiated for emergency purposes. . . ." 47 U.S.C. 227(b)(1)(B); 47 C.F.R. § 64.1200(a)(3).

204.    The foregoing acts and omissions of Defendant constitutes numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

205.    As a result of Defendant's negligent violations of 47 U.S.C. § 227 et seq., Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

206.    At all relevant times, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

207.    Defendant knew that it did not have prior express consent to make these calls, and knew or should have known that its conduct was a violation of the TCPA.

208.    Because Defendant knew or should have known that Plaintiff and Class Members did not give prior express consent to receive autodialed calls, the Court should treble the amount of statutory damages available to Plaintiff and members of the Putative Class pursuant to section 227(b)(3)(C) of the TCPA.

209.    Likewise, since Defendant knew or should have known that Plaintiff and Class Members did not give prior express consent to receive calls using an ATDS, the Court should

treble the amount of statutory damages available to Plaintiff and members of the Putative Class pursuant to section 227(b)(3) of the TCPA.

210.    As a result of Defendant knowing and/or willful violations of 47 U.S.C. § 227(b), Plaintiff and the Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(C).

211.    Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class Members relief against Defendant, MRS. GOODMAN, individually, and jointly and severally, as set forth in the Prayer for Relief below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Michael Anthony, individually and on behalf of the Classes, prays for the following relief against Defendants, individually and jointly:

A.    An order certifying the Classes as defined above, appointing Plaintiff Anthony as the representative of the Classes, and appointing his counsel as Class Counsel;

B.    Statutory damages of $500 per call, for each violation of the TCPA, into a fund for the benefit of the Plaintiff and the Class Member;

C.    Willful damages at $1,500 per call, for each violation of the TCPA, into a fund for the benefit of the Plaintiff and the Class Member;

D.    An order declaring that Defendant's actions, as set out above, violate TCPA;

E.    An injunction requiring Defendant to cease all unsolicited calling activities, and otherwise protecting the interests of the Classes;

F.    An award of reasonable attorneys' fees and costs to be paid out of the fund prayed

for above; and

G.    Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.


Dated: April 11, 2023                              Respectfully submitted,

                                                   */s/ Joshua Eggnatz*
                                                   Joshua H. Eggnatz, Esq. (FBN 0067926)
                                                   E-mail: JEggnatz@JusticeEarned.com
                                                   EGGNATZ | PASCUCCI
                                                   7450 Griffin Road, Suite 230
                                                   Davie, FL 33314
                                                   Telephone: 954-889-3359
                                                   Facsimile: 954-889-5913


                                                   Seth M. Lehrman, Esq. (FBN 132896)
                                                   E-mail: seth@epllc.com
                                                   EDWARDS POTTINGER LLC
                                                   425 North Andrews Avenue, Suite 2
                                                   Fort Lauderdale, FL 33301
                                                   Telephone: 954-524-2820
                                                   Facsimile: 954-524-2822


                                                   *Counsel for Plaintiff*